UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| JACOB WHEELER,<br><br>           Plaintiff,<br><br>           v.<br><br>NEOS THERAPEUTICS, INC., GERALD MCLAUGHLIN, GREG ROBITAILLE, BETH HECHT, JOHN SCHMID, LINDA M. SZYPER, ALAN HELLER, BRYANT FONG, and JAMES ROBINSON,<br><br>           Defendants. | Case No._____<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jacob Wheeler ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, inter alia, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Neos Therapeutics, Inc. ("Neos" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, By this action, Plaintiff seeks to enjoin the vote on a proposed transaction, pursuant to which Neos will be acquired by Aytu BioScience, Inc. ("Aytu") (the "Proposed Transaction").

2. Neos and Aytu jointly announced on December 10, 2020 that they had entered into an Agreement and Plan of Merger dated that same day (the "Merger Agreement") to sell Neos to

Aytu. The Merger Agreement further provides that each Neos stockholder will receive 0.1088 shares of Aytu common stock for each share of Neos common stock they own (the "Merger Consideration"). The Proposed Transaction is valued, on a fully diluted basis, at approximately $44.9 million based on the 10-day volume weighted average price of Aytu stock for the period ended December 9, 2020.

3. On February 9, 2021, Neos filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Neos stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, MTS Securities, LLC ("MTS"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

**PARTIES**

8. Plaintiff is a continuous stockholder of Neos and has been at all times relevant hereto.

9. Defendant Neos is a Delaware corporation with its principal executive offices located at 2490 N. Highway 360, Grand Prairie, Texas 75050. The common stock of Neos trades on the NASDAQ Global Select Market under the ticker symbol "NEOS."

10. Defendant Gerald McLaughlin ("McLaughlin") is the Chief Executive Officer, President, and a director of Neos and has been since June 2018.

11. Defendant Greg Robitaille ("Robitaille") is a director of Neos and has been 2009.

12. Defendant Beth Hecht ("Hecht") is a director of Neos and has been 2015.

13. Defendant John Schmid ("Schmid") is a director of Neos and has been 2015.

14. Defendant Linda M. Szyper ("Szyper") is a director of Neos and has been 2018.

15. Defendant Alan Heller ("Heller") is Chairman of the Board and a director of Neos and has been 2009.

16. Defendant Bryant Fong ("Fong") is a director of Neos and has been 2009.

17. Defendant James Robinson ("Robinson") is a director of Neos and has been 2019.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

19. Non-party Aytu is a Delaware corporation with its principal executive offices located at 373 Inverness Parkway, Suite 206, Englewood, CO 80112. Aytu's common stock trades on the NASDAQ Capital Market under the ticker symbol "AYTU."

### SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20. Neos is a commercial-stage pharmaceutical company developing, manufacturing and commercializing central nervous system-focused products.

21. On November 9, 2020, the Company announced its third quarter 2020 financial results. For the quarter, the Company reported Neos brands outperforming the overall ADHD market, with Adzenys XR-ODT growing by 9.9% and Cotempla XR-ODT growing by 6.5%, compared to the sequential growth of the ADHD market of 4.1%. Additionally, Neos' commercial ADHD prescriptions filled through the Neos RxConnect pharmacy network grew sequentially by 17.7%. Commenting on the results, defendant McLaughlin stated:

> During the third quarter, we saw Neos ADHD prescription volumes and the overall ADHD market begin to rebound from the profound impact of the COVID-19 pandemic in the second quarter of 2020, with continued prescription volume strength for the adult segment and a gradual recovery of the pediatric segment. We are pleased with the market rebound, and I am happy to report that, compared to the second quarter, third quarter prescription growth for Neos' ADHD medications was nearly double the overall ADHD market. In addition, we are seeing continued sequential growth of Neos commercial ADHD prescriptions being filled through Neos RxConnect, our best in class patient support program.

**The Proposed Transaction**

22. On December 10, 2020, Neos and Aytu jointly announced the Proposed Transaction, stating in relevant part:

> ENGLEWOOD, CO and GRAND PRAIRIE, TX / December 10, 2020 / Aytu BioScience, Inc. (NASDAQ: AYTU), a specialty pharmaceutical company focused on commercializing novel products that address significant patient needs, and Neos Therapeutics, Inc. (NASDAQ: NEOS), a commercial-stage pharmaceutical company developing and manufacturing central nervous system-focused products, today announced that they have entered into a definitive merger agreement pursuant to which Neos will merge with a wholly owned subsidiary of Aytu in an all-stock transaction.
>
> **Transaction Details**
>
> Upon the effectiveness of the merger (the "Merger"), Neos stockholders will be entitled to receive 0.1088 shares of common stock of Aytu for each share of Neos common stock held, after taking into account the one-for-ten reverse split of Aytu's common stock that was effected on December 8, 2020. The transaction will result in Neos stockholders owning approximately 30% of the fully diluted common shares of Aytu. The all-stock transaction is valued, on a fully diluted basis, at approximately $44.9 million based on the 10-day volume weighted average price of Aytu stock for the period ended December 9, 2020.
>
> Based on unaudited combined pro-forma net revenues for the two companies for the twelve-month period ending September 30, 2020
>
> The boards of directors of both companies have approved the transaction.
>
> **Strategic Rationale and Financial Benefits of the Transaction**
>
> The combined entity will have an increased footprint in the prescription pediatric market, an established, growing multi-brand ADHD portfolio addressing the $8.5 billion ADHD market and significant combined revenue scale. For the 12-month period ending September 30, 2020, Neos generated $57.0 million in revenues. On a combined pro-forma basis for this same period, Aytu and Neos' aggregate net revenue is over $100 million. In addition, this Merger facilitates operational and commercial synergies that can be harnessed to accelerate the path to profitability for the combined entity, with estimated annualized cost synergies of approximately $15.0 million beginning fiscal year 2022.
>
> "This is a truly transformative transaction, elevating the newly combined company to a $100 million revenue, leading specialty pharmaceutical company positioned for what we expect to be an accelerated path to profitability, continued revenue

growth and further business diversification," said Josh Disbrow, Chief Executive Officer of Aytu BioScience. "The combination of Neos with the Aytu business further increases our footprint in an attractive pediatric medicine market, following our acquisition of the Cerecor pediatric Rx assets late last year. This transaction is an excellent strategic fit with our market expansion plans and we believe creates strong stockholder value."

Mr. Disbrow continued, "This transaction increases Aytu's addressable market, adding the large and growing ADHD market, with 75.1 million scripts written annually. Importantly, and despite the impact of COVID-19 on this market, Neos' ADHD product growth significantly outpaced the overall ADHD market in the third quarter of 2020, with Adzenys XR-ODT prescriptions growing by 9.9 percent and Cotempla XR-ODT prescriptions growing by 6.5 percent. Expanding into ADHD with Neos is the ideal embodiment of Aytu's strategy to build a portfolio of best-in-class prescription therapeutics and consumer health products competing in large markets."

Neos' Chief Executive Officer, Jerry McLaughlin, stated, "I firmly believe Aytu BioScience is the right partner to continue the exceptional work our team has done to build the ADHD franchise into what it is today and to continue the development of NT0502 for the treatment of sialorrhea. By leveraging the respective commercial infrastructure of Neos and Aytu, including complementary sales call points and our best-in-class patient support program, Neos RxConnect, we expect continued growth of the product portfolio. After a thorough evaluation of strategic alternatives, the Board of Directors of Neos believes that this merger represents the highest-potential value creation opportunity for Neos stockholders."

**Additional Information**

The combined company will be led by Josh Disbrow, Chief Executive Officer of Aytu and will be headquartered in Englewood, Colorado. The board of the combined company will consist of six members designated by Aytu and two members designated by Neos, including Neos Chief Executive Officer and Director Jerry McLaughlin and Neos Director Beth Hecht.

The Merger is currently expected to close by the second quarter of 2021, subject to certain approvals by both Aytu and Neos stockholders and the satisfaction of other customary closing conditions.

As part of the transaction, Aytu has agreed to provide Neos with access to up to $5.0 million cash for working capital needs for the period prior to the closing of the Merger. In addition, upon closing of the Merger, $15.0 million in principal of Neos's existing senior secured debt facility with affiliates of Deerfield Management will be repaid, and Deerfield has agreed to allow the remaining debt under the facility to remain outstanding with the combined company following the Merger.

Indebtedness under Neos's existing ABL agreement with Encina Business Credit will also remain outstanding.

**The Proxy Statement Contains Material Misstatements or Omissions**

23. On February 9, 2020, Neos filed the Proxy Statement with the SEC. The Company furnished it to stockholders to solicit their votes in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, MTS. The omission of this information precludes the stockholders of Neos from conducting a full and fair vote on the Proposed Transaction.

*Material Omissions Concerning Neos' Financial Projections and MTS's Financial Analyses*

24. The Proxy Statement omits material information regarding Neos management's financial projections.

25. With respect to the "Neos Management Adjusted Aytu Projections" the Proxy Statement improperly omits Neos management's assumptions for revenue growth and operating expenses applied to the "Unadjusted Aytu Projections" to derive the "Neos Management Adjusted Aytu Projections."

26. The Proxy Statement also omits material information regarding MTS' financial

analyses.

27. The Proxy Statement also describes the financial analyses underlying the fairness opinion issued by MTS. This description, however, omits key inputs and assumptions underlying these analyses. By failing to disclose this information, Neos has precluded its stockholders either understanding or giving any weight to these analyses. As a result, they also cannot fairly or properly evaluate MTS's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

28. With respect to MTS' *Discounted Cash Flow Analysis -- Neos*, the Proxy Statement fails to disclose: (i) quantification of the terminal values; and (ii) quantification of the individual inputs and the assumptions underlying the range of discount rates of 15.0% to 19.0%.

29. With respect to MTS' *Discounted Cash Flow Analysis -- Aytu*, the Proxy Statement fails to disclose: (i) the terminal values; and (ii) the individual inputs and the assumptions underlying the range of discount rates of 9.0% to 13.0%.

30. With respect to MTS' *Pro Forma Combination Analysis*, the Proxy Statement fails to disclose: (i) the terminal values; and (ii) the individual inputs and the assumptions underlying the range of discount rates of 9.0% to 13.0%.

31. Without such undisclosed information, Neos stockholders cannot evaluate for themselves whether the financial analyses performed by MTS were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which MTS' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

32. The omission of this material information renders the statements in the "Certain Prospective Financial Information" and "Opinion of Neos' Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

33. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Neos will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. Defendants issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared

by MTS and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and other financial matters.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Neos, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Neos, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44. In addition, as the Proxy Statement sets forth at length, and as described herein, the

11

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

      C.      Directing the defendants to account to Plaintiff for all damages suffered because of their wrongdoing;

      D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

      E.      Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 16, 2021　　　　　　　　　　**LONG LAW, LLC**

                                               By:  */s/Brian D. Long*
　　　　　　　　　　　　　　　　　　Brian D. Long (#4347)
**OF COUNSEL:**　　　　　　　　　　　3828 Kennett Pike, Suite 208
　　　　　　　　　　　　　　　　　　Wilmington, DE 19807
**RM LAW, P.C.**　　　　　　　　　　　Telephone: (302) 729-9100
Richard A. Maniskas　　　　　　　　Email: BDLong@longlawde.com
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312　　　　　　　　　*Attorneys for Plaintiff*
Tel.: (484) 324-6800
rmaniskas@rmclasslaw.com Email: